ENTER NO JS-6 SEND

1

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

2

3

4

FILED
CLERK. U S DISTRICT COURT

JAN - 8 2003

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

5

6

7

8

ENTERED
CLERK. U S DISTRICT COURT

JAN - 9 2003

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

UNITED STATES DISTRICT COURT

9

CENTRAL DISTRICT OF CALIFORNIA

10

11

12

13   | JO ANNE CHRISTENSEN, individually
14   | and on behalf of others similarly situated,
     | including Class members GEORGE
     | HUDAK, LEE MINSHULL, CHARLES
15   | OHL, EDWARD TERINO, DON
     | WEVER and others yet to be named as
16   | members of the CLASS,

17              Plaintiff,

18              vs.

19   UNION BANK OF CALIFORNIA, N.A.
     and DOES 1 through 200, inclusive,

20

21              Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. CV 02-00608 MMM (CWx)

ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT
UNION BANK OF CALIFORNIA, N.A.'S
MOTION TO DISMISS SECOND
AMENDED COMPLAINT

22

23

    This class action seeks damages from Union Bank of California, which is alleged to have

24   conspired with Reed Slatkin in effecting a Ponzi scheme that defrauded hundreds of investors out

25   of hundreds of millions of dollars.  Plaintiff alleges that defendant Union Bank of California

26   knowingly participated in and facilitated the Ponzi scheme by providing Slatkin with credit,

27   allowing Slatkin to commingle personal and investor funds, and lending its name and prestige to

28   his operations.

1

## I. PROCEDURAL BACKGROUND

2   Harry Rockoff and Jo Anne Christensen filed this action in Los Angeles Superior Court

3   on December 21, 2001, alleging claims for conspiracy to defraud, aiding and abetting a breach

4   of fiduciary duty, and violation of California Business and Professions Code §§ 17200 et seq.

5   Union Bank removed the case to this court on January 22, 2002.  It then filed a motion to dismiss

6   on January 29, 2002, asserting that Rockoff had failed to join Slatkin, a necessary and

7   indispensable party; that the conspiracy and aiding and abetting causes of action failed to state a

8   claim upon which relief could be granted; that the fraud claims were not pled with sufficient

9   particularity as required by Federal Rule of Civil Procedure 9(b); and that the state law claims

10   pleaded in the complaint were preempted by the Employees Retirement Income Security Act

11   ("ERISA").

12   On May 22, 2002, the court granted Union Bank's motion to dismiss.  It rejected

13   defendant's arguments that Slatkin was an indispensable party and that, as pleaded, Rockoff's state

14   law claims necessarily implicated an ERISA-regulated relationship.  It found, however, that

15   Rockoff's claims for civil conspiracy, aiding and abetting, and violation of California Business

16   and Professions Code § 17200 failed to satisfy Rule 9(b)'s heightened pleading standard.  It thus

17   dismissed these claims, but granted Rockoff leave to amend.

18   Rockoff and Christensen filed a First Amended Complaint on June 10, 2002, realleging

19   identical causes of action.  Union Bank filed a motion to dismiss this amended pleading, asserting

20   that plaintiffs' claims once again were not pled with sufficient particularity to satisfy Rule 9(b);

21   that plaintiffs could not state a claim for conspiracy to commit fraudulent concealment; and that

22   the class allegations should be stricken.  On September 18, 2002, the court granted Union Bank's

23   *motion to dismiss the First Amended Complaint*.  The court found that the First Amended

24   Complaint failed adequately to allege a claim for conspiracy to commit fraud by concealment.

25   The court also found that plaintiffs' claims for civil conspiracy, aiding and abetting, and violation

26   of California Business and Professions Code §17200 failed to satisfy the heightened pleading

27   requirements of Rule 9(b).  Plaintiffs were given twenty days to file an amended complaint.

28

2

1         On October 16, 2002, Jo Anne Christensen filed a Second Amended Complaint.[1]  The

2    pleading alleges the same causes of action as its predecessors, and deletes reference to several

3    named class members while adding others.  Defendant has moved to dismiss the Second Amended

4    Complaint.

5

6                            **II.  FACTUAL BACKGROUND**

7    **A.    The Alleged Ponzi Scheme**

8         On December 21, 2001, Rockoff filed a class action lawsuit in Los Angeles Superior Court

9    on behalf of himself and hundreds of people allegedly defrauded when they invested in a Ponzi

10   scheme designed and implemented by Reed Slatkin.  Rockoff later amended his complaint and

11   joined Jo Anne Christensen as a co-class representative.  As noted, Rockoff is not named as a

12   plaintiff in the Second Amended Complaint, and Jo Anne Christensen now appears as the only

13   named class representative.  The Second Amended Complaint defines the putative class as all

14   persons or entities who maintained a custodial account with the Bank and entrusted funds to Reed

15   Slatkin and the Bank, directly or indirectly, during the period from January 1, 1990 to December

16   21, 2001.[2]  The complaint identifies, by name and amount invested, five other individuals

17   allegedly defrauded by Slatkin and Union Bank.[3]

18        Slatkin is an ordained minister of the Church of Scientology, and is not registered with the

19   State of California or the Securities and Exchange Commission ("SEC") as an investment

20   advisor.[4]  In 1990, Slatkin allegedly developed and executed a scheme to defraud those who joined

21   the Church.[5]  Plaintiff asserts that, pursuant to this scheme, Slatkin offered to invest Church

22   _____

23      [1]Harry Rockoff is no longer named as a plaintiff, and Jo Anne Christensen is now the sole
     named class representative.

24

25      [2]Second Amended Complaint, ¶ 24.

26      [3]*Id.*, ¶¶ 13-17.

27      [4]*Id.*, ¶ 29.

28      [5]*Id.*, ¶ 30.

1   members' money, promising that they would receive excellent returns with little risk.[6]  Over 500

2   Church members allegedly signed agreements allowing Slatkin to invest their money at his sole

3   discretion.[7]  These individuals collectively entrusted more than $230 million to Slatkin – almost

4   all of which was purportedly held in accounts at Union Bank.[8]  Slatkin informed investors that the

5   money would be sent from Union Bank to Switzerland, where it would be invested through

6   securities trading accounts held by a Zurich company called NAA Financial.[9] Plaintiff alleges that

7   neither NAA nor the trading accounts ever existed.[10]  Rather, she asserts, Slatkin misappropriated

8   incoming funds and used them to finance returns to existing investors in a pyramid-like scheme,

9   keeping a portion of the money for his own benefit.[11]

10   **B.      Allegations Against Union Bank**

11          Plaintiff alleges that Slatkin's investors deposited hundreds of millions of dollars into

12   custodial accounts at Union Bank.[12]  Slatkin allegedly described Union Bank as a "facility to

13   accommodate the deposits and withdrawals from" the NAA.[13] Clients allegedly received regular

14   account statements from the Bank showing that their accounts were being managed properly and

15   invested profitably.[14]  When necessary to respond to questions or concerns raised by clients,

16   Slatkin allegedly produced letters on Union Bank letterhead bearing a Zurich address and signed

17   by NAA officials, as well as NAA financial records, designed to reassure the clients and prove

18   _____

19          [6]*Id.*

20          [7]*Id.*, ¶ 31.

21          [8]*Id.*

22          [9]*Id.*

23          [10]*Id.*, ¶ 33.

24
25          [11]*Id.*, ¶¶ 2, 34.

26          [12]*Id.*, ¶ 5.

27          [13]*Id.*, ¶ 31.

28          [14]*Id.*

1  he was handling their funds as he had promised.[15]  Plaintiff alleges that the clients' money never

2  left Union Bank – except to be misappropriated, or to cover withdrawals by existing clients to

3  maintain the appearance that the scheme was legitimate.[16]

4         Plaintiff asserts that Union Bank lent its name and prestige to the Ponzi scheme by holding

5  monies for Slatkin, and that, in addition, it extended credit to him so that he could make payments

6  to existing clients to keep the Ponzi scheme afloat.[17]  Union Bank allegedly knew that maintaining

7  uninterrupted payments to the investors was essential to conceal Slatkin's fraudulent activities, and

8  to induce old and new clients to deposit further funds with the bank.[18]  At the time of the collapse,

9  the Bank had extended over $4 million in unsecured credit to Slatkin.[19]  The Bank, therefore,

10 purportedly played a central role in Slatkin's scheme.[20]

11        Plaintiff alleges that Union Bank knowingly participated in this scheme by valuing the Reed

12 Slatkin Limited Partnership in which plaintiff and the class members had supposedly invested on

13 a quarterly and year-end basis, and by sending statements to the investors that it knew contained

14 false information.[21]  Plaintiff specifically alleges that from 1990 to 1999, Cathy Leider, Vice

15 President of Imperial Trust Company (Union Bank's predecessor-in-interest), prepared statements

16 for her and other class members that set forth the alleged value of each individual's investment

17 in the Reed Slatkin Limited Partnership.[22]  Plaintiff also specifically asserts that from and after

18 the date Union Bank acquired Imperial Trust Company in 1999, and continuing to the date Slatkin

19 _____

20      [15]*Id.*, ¶ 32.

21      [16]*Id.*, ¶¶ 33, 34.

22      [17]*Id.*, ¶ 35.

23      [18]*Id.*

24

25      [19]*Id.*

26      [20]*Id.*

27      [21]*Id.*, ¶ 36.

28      [22]*Id.*, ¶ 37.

1  filed for bankruptcy in 2001, Gina Southgate, Union Bank's Relationship Manager and Vice
2  President, continued to prepare statements identical to those previously prepared by Cathy Leider,
3  which valued each individual's investment in the Reed Slatkin Limited Partnership.[23]  Gina
4  Southgate and Cathy Leider, on behalf of Union Bank and its predecessors-in-interest, Imperial
5  Trust Company and Pacific Inland Bank, allegedly transmitted these statements to plaintiff and
6  other class members on a quarterly and year-end basis.[24]

7        The values reflected in these statements were allegedly false.[25]  Plaintiff alleges that the
8  Bank transmitted the statements knowing they were false, and knowing it was in breach of its
9  obligations and duties under its custodial agreements with the clients.[26]  Plaintiff contends that
10  Union Bank had a duty to the investors, that it knowingly participated in a conspiracy to further
11  Slatkin's fraudulent scheme, and that it knowingly aided and abetted his scheme by substantially
12  assisting him in accomplishing his fraudulent goals.[27]  Union Bank allegedly received significant
13  profits over fifteen years on the millions of dollars it held in Slatkin's personal and investor
14  accounts, and on the loans it made to Slatkin.[28]

15        Based on these allegations, plaintiff pleads four claims for relief: (1) conspiracy to commit
16  fraud – concealment; (2) conspiracy to commit fraud – common plan of fraud and deceit;
17  (3) aiding and abetting a breach of fiduciary duty; and (4) violation of California Business and
18  Professions Code § 17200.  She seeks damages on the fraud claims, and restitution on behalf of
19  the general public on the § 17200 claim.

20

21

---

22  [23]*Id.*

23  [24]*Id.*

24

25  [25]*Id.*, ¶ 39.

26  [26]*Id.*, ¶ 37.

27  [27]*Id.*, ¶¶ 6, 39.

28  [28]*Id.*, ¶ 42.

6

# III. DISCUSSION

## A.     Legal Standard Governing Motions To Dismiss

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. FED.R.CIV.PROC. 12(b)(6).  A court may not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  See also *Moore v. City of Costa Mesa*, 886 F.2d 260, 262 (9th Cir. 1989); *Haddock v. Board of Dental Examiners*, 777 F.2d 462, 464 (9th Cir. 1985) (stating that a court should not dismiss a complaint if it states a claim under any legal theory, even if plaintiff erroneously relies on a different theory).  In other words, a Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).

In deciding a motion to dismiss for failure to state a claim, the court's review is limited to the contents of the complaint. *Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996); *Allarcom Pay Television, Ltd. v. General Instrument Corp.*, 69 F.3d 381, 385 (9th Cir. 1995). The court must accept all factual allegations pleaded in the complaint as true, and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996); *Mier v. Owens*, 57 F.3d 747, 750 (9th Cir. 1995) (citing *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987)); *NL Indus. Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).  It need not, however, accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981), cert. denied, 454 U.S. 1031 (1981).

In addition to the allegations of the complaint, a court may consider exhibits submitted with the complaint, documents whose contents are alleged in the complaint when their authenticity is not questioned, and matters that may be judicially noticed pursuant to Federal Rule of Evidence

1    201.[29] *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555, n. 19 (9th Cir.

2    1989); *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), cert. denied, 512 U.S. 1219 (1994).

3    **B.   Defendant's Requests For Judicial Notice**

4    The Bank has requested that the court take judicial notice of numerous documents in ruling

5    on its motion.  These include:

6    1.   A Pacific Inland Bank document titled "Trustee Responsibilities with respect to

7         Assets Subject to Investment by Other Persons," signed by class representative Jo

8         Anne Christensen and dated December 30, 1992.[30]

9    2.   A Pacific Inland Bank document titled "Trustee Responsibilities with respect to

10        Assets Subject to Investment by Other Persons," signed by putative class member

11        George Hudak and dated March 13, 1990.[31]

12    3.   An Imperial Trust Company document titled "Investment Direction Letter," signed

13        by putative class member Charles Ohl and dated May 3, 1998.[32]

14    4.   A Pacific Inland Bank document titled "Custodial Agency Agreement (Corporate),"

15        signed by putative class member Edward O. Terino and dated October 1, 1993.[33]

16    5.   An Imperial Trust Company document titled "Investment Direction Letter," signed

17        by putative class member Don Wever and dated January 12, 1998.[34]

18    6.   A document titled "Agreement of Limited Partnership of Reed Slatkin Investment

[29]Taking judicial notice of matters of public record does not convert a motion to dismiss into a motion for summary judgment. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001); *MGIC Indemnity Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).

[30]Defendant's Request for Judicial Notice in Support of Motion to Dismiss ("Def.'s Req. for Judicial Notice"), Exh. A.

[31]*Id.*, Exh. B.

[32]*Id.*, Exh. C.

[33]*Id.*, Exh. D.

[34]*Id.*, Exh. E.

8

1  Club, L.P., a California Limited Partnership," signed by class representative Jo

2  Anne Christensen and dated January 1, 1992.[35]

3  7.  A document titled "Agreement of Limited Partnership of Reed Slatkin Investment

4  Club, L.P., a California Limited Partnership," signed by class representative Jo

5  Anne Christensen and dated January 1, 1992.[36]

6  H.  A document titled "Agreement of Limited Partnership of Reed Slatkin Investment

7  Club, L.P., a California Limited Partnership," signed by putative class member

8  Edward O. Terino and dated January 1, 1992.[37]

9  9.  Second Amended Complaint dated August 20, 2002, in *Wesley West Flexible*

10  *Partnership, et al. v. Union Bank of California, et al.*, CV 02-964 RSWL.[38]

11  Under the Federal Rules of Evidence, courts can take judicial notice of facts that are not

12  subject to reasonable dispute, either because they are "(1) generally known within the territorial

13  jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to

14  sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201.

15  The first five items presented by the Bank are contracts between the named plaintiff, Jo

16  Anne Christensen, or putative class members, and one of defendant's predecessors-in-interest.

17  Items six, seven and eight are signed copies of Slatkin Limited Partnership Agreements executed

18  by Reed Slatkin and members of the putative class.  These documents are proper subjects of

19  judicial notice.  "[A] district court ruling on a motion to dismiss may consider a document the

20  authenticity of which is not contested, and upon which the plaintiff's complaint necessarily

21  relies." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).  As the *Parrino* court

22  explained: "Although we have yet to apply this rule to documents crucial to the plaintiff's claims,

23

24  _____

25  [35]*Id.*, Exh. F.

26  [36]*Id.*, Exh. G.

27  [37]*Id.*, Exh. H.

28  [38]*Id.*, Exh. I.

1  but not explicitly incorporated in his complaint, such an extension is supported by the policy

2  concern underlying the rule: preventing plaintiffs from surviving a Rule 12(b)(6) motion by

3  deliberately omitting references to documents upon which their claims are based." *Id*. See also

4  *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (". . . we have held that

5  when a plaintiff chooses not to attach to the complaint or incorporate by reference a prospectus

6  upon which it solely relies and which is integral to the complaint, the defendant may produce the

7  prospectus when attacking the complaint for its failure to state a claim, because plaintiff should

8  not so easily be allowed to escape the consequences of its own failure"); *In re Northpoint*

9  *Communications Group, Inc., Securities Litigation*, 221 F. Supp. 2d 1090, 1095 (N.D. Cal. 2002)

10  ("In ruling on a motion to dismiss, a court may take judicial notice of a document if it is relied

11  on in the complaint (regardless of whether it is expressly incorporated therein) and its authenticity

12  is not disputed," citing *Parrino*); *Springate v. Weighmasters Murphy, Inc. Money Purchase*

13  *Pension Plan*, 217 F. Supp. 2d 1007, 1013 (C.D. Cal. 2002) ("For purposes of this Motion to

14  Dismiss, this Court takes judicial notice of documents (1) and (2) only because these documents'

15  contents are alleged in the Complaint, and their authenticity is not in question").

16       The authenticity of the agreements that defendant asks the court to consider is not contested

17  by plaintiff or the putative class members, and plaintiff places great reliance on the documents in

18  her complaint.  Accordingly, the court takes judicial notice of the agreements identified as items

19  one through eight above.  Additionally, it takes judicial notice of the Second Amended Complaint

20  filed on August 20, 2002 in *Wesley West v. Union Bank*.  Court orders and filings are the type

21  of documents that are properly noticed Rule 201.  Notice can be taken, however, "only for the

22  limited purpose of recognizing the 'judicial act' that the order represents on the subject matter of

23  the litigation." *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (citing *Liberty Mut.*

24  *Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992)).  See also *San Luis*

25  *v. Badgley,* 136 F. Supp. 2d 1136, 1146 (E.D. Cal. 2000) (quoting *Jones* for the proposition that

26  a court "may take judicial notice of a document filed in another court not for the truth of the

27  matters asserted in the litigation, but rather to establish the fact of such litigation and related

28  filings"); *General Electric Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082, n. 6

1   (7th Cir. 1994) ("We agree that courts generally cannot take notice of findings of fact from other

2   proceedings for the truth [of the matter] asserted therein because these findings are disputable and

3   usually are disputed"); *Goetz v. Capital Factors, Inc.*, 120 F.3d 268, 1997 WL 415340, * 1-2

4   (9th Cir. July 22, 1997) (Unpub. Disp.) ("although a court may take judicial notice of its own

5   records, it cannot take judicial notice of the truth of the contents of all documents found therein").

6   Applying this standard, the court takes judicial notice only of the existence and legal effect of the

7   Second Amended Complaint dated August 20, 2002 in *Wesley West Flexible Partnership, et al.*

8   *v. Union Bank of California, et al.*, CV 02-964 RSWL.

9       **B.      Whether Plaintiff Has Adequately Alleged A Claim For Conspiracy To**

10              **Commit Fraud By Concealment**

11              Plaintiff's first cause of action alleges that Union Bank conspired with Slatkin to defraud

12  her and other members of the class by sending them misleading and inaccurate statements of

13  account.  Union Bank argues that the claim must be dismissed since the amended complaint fails

14  to allege an essential element of the tort of conspiracy to commit fraud by concealment, i.e., any

15  duty on the Bank's part that would give rise to an obligation to disclose Slatkin's fraudulent

16  activities to the investors.  The court disagrees.  Plaintiff has specifically alleged in the Second

17  Amended Complaint that she and other members of the class maintained custodial accounts at the

18  Bank.[39]  Plaintiff further alleges that the Bank provided plaintiff and class members trust and

19  investment services.[40]   Finally, plaintiff specifically alleges that, given the nature of these

20  agreements, the Bank had a duty to inform her and other putative class members of the proper

21  value of their custodial accounts on a monthly and year-end basis.[41]  See *Van de Kamp v. Bank*

22  *of America*, 204 Cal.App.3d 819, 860 (1988) (a bank that holds a custodial agency account "is

23  a fiduciary with respect to matters within the scope of the agency").  See also *LaMonte v. Sanwa*

24  *Bank California*,  45 Cal.App.4th 509, 517 (1996) (same, quoting *Van de Kamp*).

25  _____

26          [39]Second Amended Complaint, ¶ 49.

27          [40]*Id.*

28          [41]*Id.*

1    Defendant argues alternatively that, even if plaintiff has adequately *alleged* the existence

2  of a fiduciary duty, the language of the underlying contracts clearly contradicts these allegations.

3  Specifically, defendant asserts that the documents that established the referenced accounts with

4  its predecessors-in-interest demonstrate that Union Bank neither owed nor breached fiduciary

5  duties to plaintiff or other putative class members.

6    Defendant cites first the Pacific Inland document titled "Trustee Responsibilities with

7  respect to Assets Subject to Investment by Other Persons," signed by class representative Jo Anne

8  Christensen on December 30, 1992[42] and by putative class member George Hudak on March 13,

9  1990.[43] This document states, in relevant part:

10    "The Trustee shall not be under any obligation or duty to question any directions

11    of any person to whom investment management responsibilities have been

12    delegated, nor to review any securities or other property of the Trust constituting

13    assets thereof with respect to which another person possesses investment

14    management responsibility, nor to make any suggestions to any person in

15    connection therewith.  The Trustee has no obligations or duties with respect to the

16    acquisition, retention or disposition of any securities or other property of the Trust

17    with respect to which another person has investment management responsibility.

18    The Trustee shall not be liable, in any manner or for any reason, for the making

19    or retention of any investment pursuant to investment directions of a person

20    authorized to make such directions.  The Trustee shall not be liable for its failure

21    to invest any or all of the assets of the Trust in the absence of such directions."[44]

22  Defendant also cites an Imperial Trust Company document titled "Investment Direction Letter,"

23

24

25  _____

26    [42]Def.'s Req. for Judicial Notice, Exh. A.

27    [43]*Id.*, Exh. B.

28    [44]*Id.*

12

1  signed by putative class members Charles Ohl on May 3, 1998,[45] Edward O. Terino on October

2  1, 1993[46] and Don Wever on January 12, 1998.[47]  The relevant portion of this document states:

3  　　"Until such time as I change or revoke the following designation, I hereby instruct

4  　　you to follow the investment directions of the party hereinafter named in investing

5  　　and reinvesting the principal and interest of my above referenced IRA Account for

6  　　which you serve as Custodian. . . .  The 'hold harmless' provisions of Article XI,

7  　　Section 3, of the Trust Agreement entered into by myself and Imperial Trust

8  　　Company (and referenced above) relating to the indemnification of the Custodian

9  　　in relying upon my written instructions shall extend to the written instructions of

10 　　the party I have designated to be authorized to direct the investment of the assets

11 　　of the Account."

12 Union Bank contends that this language in the account-establishing documents demonstrates that

13 the accounts were self-directed funds over which plaintiff and the putative class members had sole

14 discretion.  It asserts that it, and its predecessors in interest, were custodians that lacked discretion

15 respecting the investment of the funds and that were obligated to follow the directions of the

16 account holders.

17 　　California courts have approved such an argument in similar factual scenarios.  In *Brown*

18 *v. California Pension Administrators*, 45 Cal.App.4th 333 (1996), the California Court of Appeal

19 held that "express provisions in documents governing the business relationship between the parties

20 limited the duties of the trustee and the administrator.  As a result, neither the trustee nor the

21 administrator had an obligation to provide appellants with information about the performance of

22 investments other than their own."  *Id.* at 337-38.  The relevant contract provisions in *Brown*,

23 *inter alia*, released and discharged the trustee from liability for any designations or directions

24

25 ────────────

26 　　[45]*Id.*, Exh. C.

27 　　[46]*Id.*, Exh. D.

28 　　[47]*Id.*, Exh. E.

13

1   provided by the investor,[48] and stated that all trust investments were to be made in accordance

2   with directions provided by the individual account holders.[49]  They further stated that neither the

3   trustee nor the administrator had a duty to review the investments made or make any inquiry

4   regarding the propriety investments made or sold.[50]  Finally, the agreements provided that it was

5   the responsibility of each individual investor to determine the amount of contributions to be made,

6   as well as the consequences of investing, withdrawing or distributing money from the account.[51]

7   Based on these provisions, the *Brown* court held that

8          "the relationship between appellants and respondents encompassed very limited

9          responsibilities. . . . [T]he relationship was confined to respondents' performance

10         of transactions selected by their customers; respondents had absolutely no

11         responsibility to advise appellants with regard to the wisdom of their investment

12         choices.  This was not an expansive fiduciary relationship giving rise to a duty to

13

14

15   [48]The specific provision stated: "I hereby release and discharge the Trustee and Plan
     Administrator from, and agree to indemnify both the Trustee and Plan Administrator from and
16   agree to indemnify both the Trustee and Plan Administrator against, and hold each harmless from,
     any and all claims, actions, or liabilities (and all expenses including attorney's fees incurred in
17   defending against any of the foregoing) arising out of the designation and directions set forth in
     this letter."  *Brown*, *supra*, 45 Cal.App.4th at 340.
18

19   [49]The provision in question stated: "All Trust investments shall be made in accordance with
     directions given to the Plan Administrator in writing by the Individual, who shall select the media
20   of investment, including reinvestment, disposal and exchanges, of all funds in the account.  The
     Trustee and Plan Administrator shall have no discretion with respect to, and no responsibility for,
21   such investments."  *Brown*, *supra*, 45 Cal.App.4th at 340.

22
     [50]The contract provided: "Neither the Trustee nor the Plan Administrator shall have any
23   duty or responsibility whatsoever to make any review of investments or to inquire into the
     propriety of making, selling, or retaining any investment, nor shall the Trustee or the Plan
24   Administrator be accountable for any loss sustained by reason of any action taken or omitted
25   pursuant to the provisions of this Article VII."  *Brown*, *supra*, 45 Cal.App.4th at 341.

26   [51]The agreement stated: "It shall be the responsibility of the Individual to determine the
     amount of the contributions and distributions to be made hereunder and neither the Trustee nor
27   the Plan Administrator shall be responsible for any consequences to the Individual resulting from
28   the making of contributions, investments or withdrawals."  *Brown*, *supra*, 45 Cal.App.4th at 341.

1            notify the customer of the risky nature of an investment, or in our case, of the poor

2            performance of similar investments held by different customers." *Id.* at 348.

3            The provisions of the *Brown* contract are similar to those found in the agreements executed

4 by members of the putative class in this case. Plaintiff asserts that *Brown* is nonetheless

5 distinguishable, arguing that the court there did not expressly determine whether or not a fiduciary

6 relationship existed between the parties. What the *Brown* court held was that there was no

7 fiduciary duty "to notify the customer[s] of the risky nature of an investment, or . . . the poor

8 performance of similar investments held by different customers" because the bank's undertaking

9 was limited by the terms of the parties' agreements. See *Brown*, *supra*, 45 Cal.App.4th at 347-

10 48. The same is true here. The contracts executed by plaintiff and other putative class members

11 in this case limited Union Bank's fiduciary duties regarding the investments that were made in

12 connection with the Slatkin Limited Partnerships. See *Van de Kamp*, *supra*, 204 Cal.App.3d at

13 860 (a bank's duties as an agent under a custodial account are "limited to the scope of the agency

14 set forth in the parties' agreement" and it "is a fiduciary [only] with respect to matters within the

15 scope of the agency"). See also *LaMonte*, *supra*, 45 Cal.App.4th at 517 (same). To the extent

16 plaintiff's claim of fraud by concealment is based on the existence of a duty to disclose that is

17 inconsistent with those limited undertakings, it must fail. To the extent it is based on a duty to

18 disclose that is contemplated by the agreements, however, it may proceed.

19            It is thus necessary to examine the specific nature of the action Union Bank allegedly took

20 to conceal Slatkin's fraud in order to determine whether it falls within the scope of the fiduciary

21 duties it assumed. Plaintiff alleges that, unlike the defendants in *Brown*, the Bank did not simply

22 fail to disclose information suggesting that the investments being made were risky, but rather

23 affirmatively provided false account statements and year-end tax reports to each of the investors

24 that concealed the fact Slatkin had misappropriated their funds. The Custodial Agency Agreement

25 (Corporate) signed by putative class member Edward Terino in October 1993 specifically required

26 that the Bank submit a quarterly statement of all cash transactions and all assets being held in the

27

28

                                      15

1    account.[52] It thus appears that the conduct that allegedly concealed Slatkin's fraud was specifically

2    within the parameters of the agency Union Bank and its predecessors-in-interest undertook in the

3    custodial agreements, and that, pursuant to *Van de Kamp* and *LaMonte*, the bank was a fiduciary

4    with respect to the provision of the statements.  Because plaintiff alleges that the bank breached

5    this duty by providing knowingly false statements of account, she has adequately pleaded a claim

6    for conspiracy to conceal Slatkin's fraud based on such facts.  See *Weinbaum v. Goldfarb,*

7    *Whitman & Cohen*, 46 Cal.App.4th 1310, 1316-17 (1996) (collecting cases, and stating that "tort

8    liability arising from conspiracy presupposes that the coconspirator is legally capable of

9    committing the tort, i.e., that he or she owes a duty to plaintiff recognized by law and is

10   potentially subject to liability for breach of that duty,'" quoting *Applied Equipment Corp. v. Litton*

11   *Saudi Arabia Limited*, 7 Cal.4th 503, 511 (1994)).[53]  To the extent the first cause of action is

12   based on Union Bank's provision of knowingly false statements of account, therefore, the motion

13   to dismiss is denied.

14   **C.     Whether Plaintiff Has Adequately Alleged A Claim For Aiding And Abetting**

15           **The Breach Of A Fiduciary Duty**

16           Plaintiff's second cause of action alleges that Union Bank aided and abetted Slatkin's

17   breach of his fiduciary duty to her and other members of the class.  Defendant argues that the

18   complaint fails to state an aiding and abetting claim on which relief can be granted, because it

19

20   _____

21           [52]See Def.'s Req. for Judicial Notice, Exh. D.

22           [53]The court notes that plaintiff's first cause of action contains allegations regarding Union
     Bank's failure to disclose the fact that it was extending credit to Slatkin (see Second Amended
23   Complaint, ¶ 55), its concealment of material information regarding Slatkin's enterprise and
     business activities (*id.*, ¶ 57), its failure properly to handle their investments (*id.*, ¶ 59), and
24   various other, broad allegations regarding the bank's facilitation of Slatkin's fraudulent activities
     (see, e.g., *id.*, ¶¶ 51, 53, 56, 57).  Given the limited nature of the fiduciary duty reflected in the
25   various custodial account documents, there is no basis for a finding that these failures to disclose
     and/or act constitutes breaches of duty or that they would support a claim for conspiracy to
26   commit fraud by concealment.  To the extent plaintiff's first cause of action is premised on any
     activity of the bank other than its provision of quarterly account statements, therefore, the motion
27   to dismiss is granted.

28

16

1  does not plead that the Bank participated in the breach for its own financial gain or advantage.

2        To hold a non-fiduciary liable for aiding and abetting a fiduciary's breach of his duties,

3  California courts generally hold that the non-fiduciary defendant must have participated in the

4  breach for personal gain or in furtherance of its own financial advantage. See, e.g., *Doctors' Co.*

5  *v. Superior Court*, 49 Cal.3d 39, 47 (1989) ("Since the nonfiduciary defendants had acted not

6  simply as agents or employees of the fiduciary defendants but rather in furtherance of their own

7  financial gain, they could not have been relieved from liability"); *Cooper v. Equity Gen.*

8  *Insurance*, 219 Cal.App.3d 1252, 1260 (1990) ("[I]n such a situation, where the attorneys were

9  assignees of the beneficial interest in the deed of trust, then they were not merely agents of

10  defendants but were also acting in furtherance of their own financial interests, and should be liable

11  for conspiracy to violate defendants' duty," citing *Doctors' Co.*, *supra*, 49 Cal.3d at 46). See

12  also *Richardson v. Reliance Nat. Indem. Co.*, No. C 99-2952 CRB, 2000 WL 284211, * 11

13  (N.D. Cal. Mar. 9, 2000) ("Under California law, a plaintiff may sue a third party for aiding and

14  abetting a breach of fiduciary duty, but only if the third party was acting for personal gain or in

15  furtherance of his or her own financial advantage").

16        Plaintiff does not dispute that she is required to plead that the bank acted for financial gain

17  in order to state a cause of action for aiding and abetting Slatkin's breach of fiduciary duty. She

18  asserts, however, that she has adequately alleged this element of the claim. Plaintiff contends that

19  the Bank "had an incentive to show the plaintiffs were making a profit in order to keep their

20  accounts and . . . continue to make millions from supposedly servicing the accounts. Thus, the

21  Second Amended Complaint makes it clear that the Bank aided and abetted Slatkin for its own

22  financial gain."[54]

23        California courts have uniformly held that the receipt of ordinary business fees does not

24  satisfy the "personal gain or financial advantage" element of the cause of action. See *In re*

25  *County of Orange*, 203 B.R. 983, 999-1000 (Bankr. C.D. Cal. 1996) ("While *Doctor's Co.* did

26  provide for an exception to the general rule limiting vicarious liability when the nonfiduciary acts

27

28        [54]Plaintiff's Opposition at 9:15-17.

1   in furtherance of its own financial gain, the gain must be more than the fees received from the

2   fiduciary-defendant that the nonfiduciary is accused of conspiring with. . . .  In the Complaint,

3   there is no alleged financial gain for S & P other than the fees it received from the County in

4   connection with the note offerings.  This is not enough to meet the exception delineated in

5   *Doctor's Co*"), aff'd. in part, rev'd. in part on other grounds, 245 B.R. 138 (C.D. Cal. 1997);

6   *Cooper, supra*, 219 Cal.App.3d at 1260 ("The attorneys in *Black* had a beneficial interest in the

7   deed of trust which was the subject of the litigation.  Their financial gain was from the

8   enhancement of their property interest, not from fees generated by their work as agents of their

9   clients.  In contrast, Equity has not alleged that Seligson stood to gain anything more than a fee

10  for his work as an attorney"); *Skarbrevik v. Cohen, England & Whitfield*, 231 Cal.App.3d 692,

11  710 (1991) ("At oral argument on rehearing, plaintiff conceded that this case does not fall within

12  the exception that permits conspiracy liability when a defendant agent who has no personal duty

13  to the plaintiff acts as an individual for his or her own individual advantage rather than solely on

14  behalf of the principal.  As we have pointed out, Comis and his law firm received only modest

15  compensation for their services"); *Richardson, supra*, 2000 WL 284211 at * 11  ("Plaintiff argues

16  that Deloitte & Touche's receipt of its regular fees from Sable should satisfy the 'financial

17  advantage' test.  However, such a theory would swallow the entire 'financial advantage' rule.

18  The purpose of the rule is to protect employees and agents of a principal against the imposition

19  of aiding and abetting liability.  Essentially, plaintiff urges the Court to impose aiding and abetting

20  liability on Burke and Deloitte & Touche by mere virtue of the fact that they were employed by

21  the Reliance defendants.  Applying plaintiff's theory against the Deloitte defendants would impose

22  liability on them precisely because they are employees or agents of the principal.  This argument

23  runs directly contrary to the goals of the 'financial advantage' rule, and the Court cannot accept

24  it").

25          Plaintiff argues that the rule does not apply to the present case because it is limited to fees

26  that are paid by the fiduciary whose breach the non-fiduciary aids and abets.  Because Union

27  Bank's fees were allegedly paid by the putative class members rather than by Slatkin, plaintiff

28

1    asserts the rule is inapplicable.[55]  She seizes, in this regard, on language in defendant's motion,

2    which states that the non-fiduciary's gain must be more than "fees received from servicing the

3    fiduciary."[56]  The court does not believe the cases can be so narrowly read.   While the *County*

4    *of Orange* case makes specific reference to fees received from the fiduciary with whom the non-

5    fiduciary is accused of conspiring, most of the decisions speak broadly of financial gain or

6    advantage that is separate and apart from fees generated by the non-fiduciary's work for clients.

7    Moreover, even were plaintiff's articulation of the rule correct, and even if here the fees were

8    paid by plaintiff and other putative class members rather than the fiduciary, Slatkin, the complaint

9    asserts that Union Bank was "servicing" Slatkin and his allegedly fraudulent accounts by allowing

10   him to move money between class members' accounts and his own, and by otherwise controlling

11   the funds that were deposited therein.  Because plaintiff has failed adequately to allege that Union

12   Bank participated in Slatkin's alleged breach of fiduciary duty for its personal gain or in

13   furtherance of its own financial advantage, the third cause of action must be dismissed.   As

14   plaintiff has had three opportunities to amend, the dismissal is with prejudice.

15        **D.       Whether Plaintiff's Amended Claims Are Alleged With Sufficient Particularly**

16               **Under Rule 9(b)**

17        Union Bank argues that the first claim alleging conspiracy to commit fraud by concealment

18   and the remaining causes of action must be dismissed because they fail to allege the circumstances

19   surrounding the alleged fraud in sufficient detail as required by Rule 9(b) of the Federal Rules of

20   Civil Procedure.

21            **1.       The Civil Conspiracy Claims**

22        "Although the language of Rule 9(b) confines its requirements to claims of mistake and

23   fraud, the requirements of the rule apply to all cases where the gravamen of the claim is fraud

24   even though the theory supporting the claim is not technically termed fraud."  *Toner v. Allstate*

25   *Ins. Co.*, 821 F. Supp. 276, 283 (D. Del. 1993) (citing *In re Healthco Int'l, Inc. Sec. Litig.*, 777

26   _____

27        [55]Plaintiff's Opposition at 10:3-15.

28        [56]See Motion to Dismiss at 14:23-25.

1  F. Supp. 109, 113 (D. Mass. 1991) (holding that Rule 9(b) is applicable "to all claims where

2  'fraud lies at the core of the action'" (citation omitted))).  See also *Frith v. Guardian Life Ins. Co.*

3  *of Am.*, 9 F. Supp. 2d 734, 743 (S.D. Tex. 1998) (quoting *Toner*); *In re Computervision Corp.*

4  *Sec. Litig.*, 869 F. Supp. 56, 63 (D. Mass. 1994) ("Although no fraud claim is pleaded *per se* in

5  the Complaint, in the First Circuit the particularity requirement of Rule 9(b) applies where 'fraud

6  lies at the core of the action,'" quoting *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1985)).

7        Here, the conspiracy claims rest entirely on allegations of fraud and misrepresentation.

8  See *Hayduk*, *supra*, 775 F.2d at 441 (Rule 9(b) applied to a conspiracy claim that was "directly

9  linked to the fraud allegations"); *Toner*, *supra*, 821 F. Supp. at 279 (claim for breach of the

10  covenant of good faith and fair dealing was subject to Rule 9(b) because the breach alleged

11  "amount[ed] to "'fraud, deceit, or misrepresentation'").  Because plaintiff's conspiracy to defraud

12  claims allege "fraud" at their core, they are subject to the pleading requirements of Rule 9(b).

13        Rule 9(b) requires that the facts constituting the fraud be pled with specificity.  Conclusory

14  allegations are insufficient.  FED.R.CIV.PROC. 9(b); *Moore v. Kayport Package Exp., Inc.*, 885

15  F.2d 531, 540 (9th Cir. 1989) ("A pleading is sufficient under Rule 9(b) if it identifies the

16  circumstances constituting fraud so that a defendant can prepare an adequate answer to the

17  allegations.  While statements of the time, place and nature of the alleged fraudulent activities are

18  sufficient, mere conclusory allegations of fraud are insufficient").  See also *Walling v. Beverly*

19  *Enters.*, 476 F.2d 393, 397 (9th Cir. 1973) (concluding that allegations stating the time, place,

20  and nature of allegedly fraudulent activities meet Rule 9(b)'s particularity requirement).

21        Rule 9(b) "does not require nor make legitimate the pleading of detailed evidentiary

22  matter."  All that is necessary is "identification of the circumstances constituting fraud so that the

23  defendant can prepare an adequate answer from the allegations."  *Walling*, *supra*, 476 F.2d at 397

24  (alleging in conclusory fashion that defendant's conduct was fraudulent was not sufficient under

25  Rule 9(b)).  Nonetheless, a complaint must "identify the source of the fraud and distinguish

26  among the defendants with respect to their roles in it."  *Hokama v. E.F. Hutton & Co., Inc.*, 566

27  F. Supp. 636, 645 (C.D. Cal. 1983).  See also *Miscellaneous Serv. Workers Local # 427 v.*

28  *Philco-Ford Corp.*, 661 F.2d 776, 782 (9th Cir. 1981) (holding that Rule 9(b) requires a pleader

1   to set forth the "time, place and specific content of the false representations as well as the

2   identities of the parties to the misrepresentation"); *Comwest, Inc., v. American Operator Serv.,*

3   *Inc.*, 765 F. Supp. 1467, 1471 (C.D. Cal. 1991) ("Given that allegations of fraud are particularly

4   injurious to business and professional reputations, a fraud claim may withstand a Rule 9(b)

5   challenge only if it states 'the manner in which [the alleged misrepresentations] are false, and the

6   facts that support an inference of fraud by each defendant,'" quoting *McFarland v. Memorex*

7   *Corp.*, 493 F. Supp. 631, 639 (N.D. Cal. 1980)); *Zatkin v. Primuth*, 551 F. Supp. 39, 42 (S.D.

8   Cal. 1982) (noting that statements should be attributed to individual defendants where possible).

9          The court dismissed the civil conspiracy claims in the First Amended Complaint for three

10  reasons. First, it concluded that the complaint failed to allege any facts demonstrating that Union

11  Bank had acted with the requisite mental state in issuing the allegedly false statements of

12  account.[57]  It noted that, assuming the statements disseminated by Union Bank were false, the

13  complaint did not allege any facts from which it could be inferred that the bank knew, or had

14  reason to know, of the falsity. Absent allegations of knowledge or imputed knowledge, the court

15  observed, the claims did not satisfy Rule 9(b)'s specificity requirement. Compare *Warshaw v.*

16  *Xoma Corp.*, 74 F.3d 955, 960 (9th Cir. 1996) (holding that plaintiff had complied with Rule 9(b)

17  where "[t]he Complaint alleges several optimistic public statements made by Xoma, its officers,

18  the press, and securities analysts, between the dates of March 2, 1992 and June 4, 1992. The

19  Complaint asserts that the defendants knew that the facts contravened their 'optimistic' statements

20  that E5 was safe, effective, and would be approved by the FDA") with *Attick v. Valeria*

21  *Associates, L.P.*, 835 F. Supp. 103, 111 (S.D.N.Y. 1992) (dismissing a complaint where "no

22  facts [were] pleaded showing that FC Bank, or any of its agents, knew or should have known that

23  those circumstances had not occurred").

24          Second, the court concluded that the complaint failed to allege with specificity the time

25

26          [57]Plaintiff alleged in the original and first amended complaints that Union Bank was guilty

27  of fraudulent concealment because it wrongfully allowed Slatkin to "commingle" funds. These
    allegations are not included in the Second Amended Complaint. Rather, plaintiff fraudulent

28  concealment claim is based on the provision of allegedly fraudulent account statements.

1  frame within which Union Bank's allegedly fraudulent behavior occurred.  The First Amended

2  Complaint alleged that the dissemination of the false statements of account "occurred throughout

3  the Class period, from 1990 to after Slatkin filed bankruptcy in May 2001."[58]  It further alleged

4  that each of the named plaintiffs received such statements quarterly and at year-end during the

5  period he or she had funds on deposit at the bank.[59]  While this provided a time frame of sorts,

6  the court concluded it was not sufficiently specific to satisfy the dictates of Rule 9(b).

7          Third, and finally, the court found that First Amended Complaint failed to identify the

8  individuals who acted for Union Bank in effecting the fraud and/or conspiracy.  While the

9  pleading named two Union Bank employees (Relationship Manager and Vice President Gina

10 Southgate and Vice President Ronald Chaisson), as well as the employee of a predecessor

11 company (Cathy Leider), it alleged only that these individuals were among the agents and

12 employees through whom the bank acted fraudulently.[60]  The court found that such conclusory

13 allegations failed to satisfy Rule 9(b)'s heightened pleading requirement since they failed to

14 indicate the specific misrepresentations such individuals made, or the specific manner in which

15 they participated in Slatkin's fraud.  For all of these reasons, the court found that the allegations

16 in the First Amended Complaint did not plead conspiracy or the bank's participation in Slatkin's

17 fraud with the requisite specificity.

18         The Second Amended Complaint resolves these concerns.  First, plaintiff alleges

19 specifically that the statements prepared and sent by Union Bank were false, and that the bank

20 knew the statements were false.[61]  While defendant argues the Second Amended Complaint does

21 not add any factual allegations regarding Union Bank's knowledge that the statements were

22 inaccurate, a review of the pleading demonstrates this is not so.  Plaintiff expressly asserts that

23

24 ————————————

25     [58]*Id.*, ¶ 55.

26     [59]*Id.*, ¶¶ 50, 51.

27     [60]*Id.*, ¶¶ 54, 65.

28     [61]Second Amended Complaint, ¶¶ 36, 52, 59 and 69.

22

1  "the Bank would send statements to the investors knowing that each of the statements sent

2  contained false and untrue information."[62] She further alleges that "the values of the investments

3  reflected in the statements were false and known to be false by defendants and each of them."[63]

4  These factual allegations of actual knowledge are sufficient to satisfy Rule 9(b)'s specificity

5  requirement.[64]

6      Second, the complaint has alleged both the specific time frames within which the false

7  statements of account were sent, and specific instances in which they were received by members

8  of the class.  The complaint alleges that from 1990 to 1999, Imperial Trust prepared statements

9  valuing the Slatkin Partnership investments that it submitted to plaintiff and her fellow class

10  members on a quarterly and year-end basis.  The complaint further alleges that from 1999 to

11  2001, Union Bank did the same.  The pleading additionally alleges that plaintiff received such

12  statements for the quarterly periods ending March 31, 1999; June 30, 1999; September 30, 1999;

13  and December 31, 1999.  These allegations sufficiently identify a specific time frame within

14  which the allegedly fraudulent conduct occurred.

15      Similarly, the Second Amended Complaint specifically alleges that Cathy Leider (Union

16  Bank) and Gina Southgate (Imperial) prepared the statements that falsely valued the investors'

17  accounts.  Defendant argues that the complaint "fails to allege that Southgate or Leider – or any

18  other individual for that matter – knew that the statements were false when they sent them (or

19  ever), or had reason to know."[65]  By identifying Southgate and Leider as the bank agents who

20  ———————————

21      [62]*Id.*, ¶ 36.

22      [63]*Id.*, ¶ 59.

23      [64]The Second Amended Complaint continues to contain allegations found in the predecessor
24  pleading to the effect that "Union Bank had a duty to investigate the true value of the investment
   and the true value of plaintiff's and the class members' custodial accounts. . . . As a result, Union
25  Bank knew or should have known that the values of the investments it was providing to plaintiffs
   and the class in these account statements were false."  (See *id.*, ¶ 59.)  These potentially
26  inadequate allegations are superseded, however, by plaintiff's direct assertion in the same
27  paragraph that the bank knew of the falsity of the statements it was submitting to the investors.

28      [65]Motion to Dismiss at 18:9-11.

1   prepared and sent the false statements of account, and by alleging that the bank knew of the

2   falsity, however, the complaint satisfies the requirements of Rule 9(b). It indicates the manner

3   in which the named representatives participated in Slatkin's fraud, and it attributes specific

4   misrepresentations and concealments to them. For all of these reasons, the court finds that the

5   allegations in the Second Amended Complaint plead the bank's alleged conspiracy to commit

6   fraud by concealment and pursuant to a common plan with the requisite specificity.

7                    **2.     California Business And Professions Code § 17200 Claim**

8          Plaintiff's final claim for relief is brought on behalf of the general public, and alleges that

9   Union Bank engaged in unfair business practices violating California Business & Professions Code

10  §§ 17200 et seq. The claim incorporates the earlier factual allegations that support plaintiff's civil

11  conspiracy and aiding and abetting causes of action.[66] It further avers: "Defendants, by their

12  above referenced conduct, including providing Slatkin with unsecured credit to further the

13  scheme, lending Slatkin its name and prestige and providing its customers with account statements

14  which were false have violated Business and Professions Code §17200."[67] Union Bank argues

15  that, like the first three claims, plaintiff's § 17200 claim must be dismissed pursuant to Rule 9(b)

16  for failure to plead the underlying fraud, aiding and abetting, conspiracy, and substantial

17  assistance with particularity.

18         Plaintiff responds that its § 17200 claim is not subject to the heightened pleading standard

19  set forth in Rule 9(b) and that, even if the claim is subject to the rule, its requirements have been

20  met. The court need not reach the first argument since it finds that plaintiff's amended pleading

21  satisfies Rule 9(b). To state a cause of action for violation of section 17200, a plaintiff must

22  allege an "unlawful, unfair or fraudulent business act or practice." CAL. BUS. & PROF. CODE

23  § 17200. See also *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20

24

25  _____

26  [66]Second Amended Complaint, ¶ 82 ("Defendants, have committed acts of unfair
    competition as defined by the Business and Professions Code §17200, et seq., by their conduct

27  as alleged above").

28         [67]*Id.*, ¶ 83.

                                        24

1  Cal.4th 163, 180 (1999) (". . . as relevant here, [§ 17200] defines "unfair competition to include

2  any unlawful, unfair or fraudulent business act or practice. . . . Its coverage is sweeping,

3  embracing anything that can properly be called a business practice and that at the same time is

4  forbidden by law. . . . By proscribing any unlawful business practice, section 17200 borrows

5  violations of other laws and treats them as unlawful practices that the unfair competition law

6  makes independently actionable. . . . However, the law does more than just borrow.    The

7  statutory language referring to any unlawful, unfair or fraudulent practice . . . makes clear that

8  a practice may be deemed unfair even if not specifically proscribed by some other law.  Because

9  Business and Professions Code section 17200 is written in the disjunctive, it establishes three

10 varieties of unfair competition – acts or practices which are unlawful, or unfair, or fraudulent.

11 In other words, a practice is prohibited as unfair or deceptive even if not unlawful and vice versa"

12 (internal quotations omitted)).  Plaintiff's §17200 allegations are sufficiently specific to satisfy

13 Rule 9(b).   As discussed above in connection with the court's analysis of the conspiracy and

14 aiding and abetting claims, plaintiff has specifically alleged fraudulent business practices by

15 defendant.    Additionally, plaintiff has specifically alleged unfair business practices in the

16 provision of unsecured credit to Slatkin to further the alleged scheme.   The court finds these

17 allegations, taken together, to be sufficiently specific to satisfy Rule 9(b)'s heightened pleading

18 requirement for claims brought under Section 17200.  It therefore denies defendant's motion to

19 dismiss count four.

20  **E.    Whether The Claims of Those Plaintiffs Who Failed To File an Amended**

21  **Complaint Should be Dismissed With Prejudice**

22         Defendants argue finally that the claims of Harry Rockoff and nine other putative class

23 members who failed to join in the Second Amended Complaint should be dismissed with

24 prejudice.[68]  It is undisputed that these putative class members failed to file an amended complaint

25 within the time required by the court.  Because of this, the court may dismiss their claims.  See

---

27 [68]These individuals are Harry Rockoff, Patrick Clouden, Jerry Dyas, Mike Kaplan, Edward
Marsh, Robert Metzler, Nationwide Title Clearing, Inc., Fred Ockrim, David Slaughter and Herb

28 Zerden.

25

1   *Truesdell v. Southern California Permanente Medical Group*, 293 F.3d 1146, 1152 (9th Cir.

2   2002) ("The court noted that the failure to file a First Amended Complaint by the May 15

3   deadline would result in dismissal of the entire case. . . "); *Wildey v. General Atomics*, 46 Fed.

4   Appx. 487, 2002 WL 31074057, * 1 (9th Cir. Sept. 9, 2002) (Unpub. Disp.) ("The district court

5   did not abuse its discretion by dismissing the action as to the remaining defendants as a result of

6   Wildey's failure to file a timely third amended complaint"); *Mason v. Witt*, 74 F. Supp. 2d 955,

7   963 (E.D. Cal. 1999) ("Plaintiff is further advised that failure to file an amended complaint

8   consistent with this memorandum opinion and order within the time provided for below will result

9   in dismissal of the entire action"). The question is whether dismissal should be with prejudice.

10       Under Rule 41(b), a plaintiff's failure to comply with a court order subjects the plaintiff's

11   action to dismissal with prejudice.[69]   Courts in the Ninth Circuit have generally held that a

12   plaintiff's failure to file an amended complaint within the time permitted by the court constitutes

13   noncompliance with a court order. *Yourish v. California Amplifier*, 191 F.3d 983, 986 (9th Cir.

14   1999) ("Under Ninth Circuit precedent, when a plaintiff fails to amend his complaint after the

15   district judge dismisses the complaint with leave to amend, the dismissal is typically considered

16   a dismissal for failing to comply with a court order rather than for failing to prosecute the

17   claim"); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260 (9th Cir. 1992) ("Pursuant to Federal Rule of

18   Civil Procedure 41(b), the district court may dismiss an action for failure to comply with any

19   order of the court. We review for abuse of discretion a district court's dismissal of an action for

20   failure to comply with the court's order requiring submission of an amended complaint in a timely

21   manner," citing *Eldridge v. Block*, 832 F.2d 1132, 1136 (9th Cir. 1987), and *Nevijel v. North*

22   *Coast Life Ins. Co.*, 651 F.2d 671, 674 (9th Cir. 1981)). For this reason, a court may dismiss

23   an action with prejudice for failure to file an amended complaint within the prescribed time

24   ───────────────

25       [69]Rule 41(b) provides: "For failure of the plaintiff to prosecute or to comply with these
rules or any order of court, a defendant may move for dismissal of an action or of any claim
26   against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal
under this subdivision and any dismissal not provided for in this rule, other than a dismissal for
27   lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as
28   an adjudication upon the merits."

1    period.

2        The Ninth Circuit has nonetheless acknowledged that dismissal with prejudice is a harsh

3    penalty, and has developed a five-factor test to evaluate whether such a dismissal is an appropriate

4    sanction.   This test requires the court to consider "(1) the public's interest in expeditious

5    resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the

6    defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the

7    availability of less drastic alternatives." *Yourish*, *supra*, 191 F.3d at 990 (citing *Hernandez v.*

8    *City of El Monte*, 138 F.3d 393, 399 (9th Cir. 1998)). See also *Ferdik*, *supra*, 963 F.2d at 1260-

9    61 (same).  Applying these factors in the present case, it appears that dismissal with prejudice is

10   appropriate.

11       First, the public's interest in expeditious resolution favors dismissal with prejudice in this

12   case.  Plaintiffs had three opportunities to present a properly drafted complaint, and the court

13   issued extensive written orders providing guidance to assist them in that regard.  To allow plaintiff

14   to withdraw from the litigation when it appeared that defendant was likely to prevail in defeating

15   all or a substantial portion of their claims, so that they could file a new action or participate as

16   plaintiffs in a competing class action, would run contrary to the public interest in expeditious

17   resolution of litigation.  Second, these plaintiffs' failure to file an amended complaint interferes

18   with the court's management of its docket because it creates uncertainty as to whether the case

19   has been resolved with respect to the parties that have withdrawn.  For the same reason, failure

20   to file an amended complaint also creates a significant risk of prejudice to defendant since

21   defendant will be unable to finally resolve the case as to these putative class members who may

22   bring suit against it in the future.  Fourth, all prior dismissals have been dismissals on the merits.

23   *Stewart v. U.S. Bancorp*, 297 F.3d 953, 957 (9th Cir. 2002) ("Supreme Court precedent confirms

24   that a dismissal for failure to state a claim under Rule 12(b)(6) is a 'judgment on the merits' to

25   which res judicata applies," citing *Federated Dep't. Stores v. Moitie*, 452 U.S. 394, 399, n. 3

26   (1981)).  If the court were to dismiss these parties from the action without prejudice at this point,

27   defendant would lose the res judicata benefit of these prior rulings in its favor.  Finally, although

28   there is a less drastic alternative, namely, dismissal without prejudice, the majority of the *Yourish*

27

1    factors weigh in favor of dismissal with prejudice.

2           Plaintiff does not dispute the court's application of this rule.  Rather, plaintiff argues that

3    because the suit is a class action, the individuals named in the First Amended Complaint who

4    failed to join in the Second Amended Complaint were entitled to remove themselves as plaintiffs

5    without prejudice.  Specifically, she asserts:

6               "Only after class certification is granted must these class members participate in the

7               litigation by choosing to opt in or out of the class.  Moreover, if a class is certified

8               in this case, and these named class members who[ ] did not join in filing the Second

9               Amended Complaint fall within the parameters of the certified class, nothing

10              prohibits them from submitting a claim as a class member and recovering if they

11              qualify.   Thus, they were not required to join in filing the Second Amended

12              Complaint and they cannot be dismissed with prejudice."[70]

13   As can be seen, plaintiff argues that the parties who joined the first amended complaint as named

14   plaintiffs are not bound by the court's order dismissing the action with leave to amend because

15   their status as putative class members gives them the right to withdraw from the suit at any time

16   prior to certification.  The court disagrees.

17          It is well-established that putative class members are not required to participate in or

18   withdraw from a class action until they receive notice of their inclusion within a class.  See

19   *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810-11 (1985) ("Unlike a defendant in a normal

20   civil suit, an absent class-action plaintiff is not required to do anything.  He may sit back and

21   allow the litigation to run its course, content in knowing that there are safeguards provided for

22   his protection.  In most class actions an absent plaintiff is provided at least with an opportunity

23   to 'opt out' of the class, and if he takes advantage of that opportunity he is removed from the

24   litigation entirely"); *American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 548 (1973) ("Thus,

25   potential class members retain the option to participate in or withdraw from the class action only

26   until a point in the litigation 'as soon as practicable after the commencement' of the action when

27   _____

28          [70]Plaintiff's Opposition at 19:22-20:3.

28

1  the suit is allowed to continue as a class action and they are sent notice of their inclusion within

2  the confines of the class.  Thereafter they are either nonparties to the suit and ineligible to

3  participate in a recovery or to be bound by a judgment, or else they are full members who must

4  abide by the final judgment, whether favorable or adverse").  This rule does not allow putative

5  class members to join in a class action, however, appear before the court as named parties, and

6  then withdraw from the action following adverse rulings so that they may file a new action in a

7  separate courtroom.

8        In fact, federal courts have generally held that a judgment on the merits prior to class

9  certification is binding on all named parties to the suit. See, e.g., *Pharo v. Smith*, 621 F.2d 656,

10  664 (5th Cir. 1980) ("Without certification, no final decision could be binding on a class such as

11  the one that is purported to exist in this case.  We therefore treat this case as one brought by the

12  named plaintiffs individually, not as members of a class"); *Sasser v. Amen*, 2001 WL 764953,

13  * 1 (N.D.Cal. 2001) ("Further, since no class was ever certified in this matter, this order binds

14  only the ten plaintiffs currently named in the complaint"); *Gonzalez v. Litscher*, __ F. Supp. 2d

15  __, 2002 WL 31478827, * 6 (W.D. Wis. 2002) ("A failure to properly certify an action as a class

16  action and formally identify the class under the procedures set forth in Rule 23, renders the action

17  not properly a class action, and results in only the named parties being bound by the judgment");

18  *Sikes v. American Tel. and Tel. Co.*, 841 F. Supp. 1572, 1579 (S.D. Ga. 1993) ("The dismissal

19  itself was without prejudice, and since it occurred in the pre-certification stage, the dismissal is

20  not res judicata on the absent class members.  Those individuals not named in the Sikes action are

21  thus free to bring their claims against Teleline as they see fit, either individually or as additional

22  parties under the Federal Rules of Civil Procedure"); *Cole v. Finsel*, 691 F. Supp. 841, 846

23  (M.D. Pa. 1988) ("A judgment entered on preliminary objections in a class action before

24  certification binds the named parties to the action"); *United States v. State of Texas*, 430 F. Supp.

25  920, 926 (S.D. Tex. 1977) ("Analyzing the applicability of res judicata, the Court in *McDonough*

26  held that no class was ever certified in the first case, that the judgment bound only the parties

27

28

1    named in the first suit and those in privity with them. . .").[71]

2      It is undisputed that the ten individuals who failed to join in the Second Amended

3 Complaint were "named parties" to the First Amended Complaint. It is also undisputed that the

4 order dismissing that complaint was a final judgment on the merits issued prior to certification of

5 a class. Accordingly, it binding on each of the ten plaintiffs. Their failure to join in the Second

6 Amended Complaint that was filed constituted a failure to comply with a court order, thereby

7 subjecting them to dismissal with prejudice under Rule 41(b). Applying the *Yourish* factors, the

8 court finds that dismissal with prejudice is appropriate as to all ten individuals.[72]

9

10                      **III. CONCLUSION**

11      For the reasons stated, the court grants Union Bank's motion to dismiss count two with

12 _____

13    [71]Plaintiff cites *City of Inglewood v. City of Los Angeles*, 451 F.2d 948 (9th Cir. 1971),
for the proposition that prior to certification, a putative class action must be treated as a class

14 action in fact until a contrary determination is made. It is true that the *Inglewood* court held that

15 "during the interim between filing and the 23(c) (1) determination by the court, it must be
assumed to be a class action for purposes of dismissal or compromise under 23(e) unless and until

16 a contrary determination is made under 23(c)(1)." *Id.* at 951. This holding, however, does not

17 contradict the general rule that a final judgment on the merits prior to class certification binds only
the parties named in the complaint, as Rule 23(e) requires only that "[a] class action . . . not be

18 dismissed or compromised without the approval of the court," and directs that "notice of the

19 proposed dismissal or compromise . . . be given to all members of the class in such manner as
the court directs." FED.R.CIV.PROC. 23(e).

20
   [72]Plaintiff argues that Harry Rockoff cannot be dismissed because, as a prior representative

21 plaintiff, he remains a putative member of the class. Plaintiff cites *In re Carbon Dioxide Industry*

22 *Antitrust Litigation*, 155 F.R.D. 209 (M.D. Fla. 1993), as support for this proposition. In
*Carbon Dioxide*, plaintiffs that were originally named as representative plaintiffs were later

23 removed. The court held that "by virtue of not being chosen as class representatives, these
Plaintiffs remain as passive class members, on equal footing with all other non-representative class

24 members." *Id.* at 211. Unlike the present case, however, the change in the plaintiffs'

25 representative status did not follow a dismissal of the complaint on the merits. Rather, plaintiffs
offered to "de-select" certain named class representatives, and relegate them to the general

26 unnamed class with defendants' acquiescence. There was no issue regarding the effect of a prior

27 final order of the court dismissing the plaintiffs' claims, or the effect of the plaintiffs' failure to
reassert those claims. *Carbon Dioxide*, therefore, does not support plaintiff's contention that

28 Rockoff has been relegated to the status of passive class member.

1  prejudice for failure to state a claim upon which relief can be granted.  It denies the motion to

2  dismiss counts one, three and four.  It also dismisses with prejudice the claims of Harry Rockoff,

3  Patrick Clouden, Jerry Dyas, Mike Kaplan, Edward Marsh, Robert Metzler, Nationwide Title

4  Clearing, Inc., Fred Ockrim, David Slaughter and Herb Zerden against defendant Union Bank.

5

6  DATED: January 6, 2003

7                                                            MARGARET M. MORROW
                                                            UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28